Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21 Agreement for Compensation, which was approved by the Commission on April 16, 1992, and in the I.C. Form 26 Supplemental Agreement, which was approved by the Commission on June 18, 1992 as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. North Carolina Farm Bureau Mutual Insurance Company was the carrier on the risk.
3. On March 4, 1992, the plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment when the truck which he was driving was hit by a motorist as plaintiff attempted a left-hand turn.
4. As a result of the admittedly compensable injury, the parties entered into a Form 21 Agreement for Compensation, pursuant to which the plaintiff's average weekly wage was established to be $293.47, which yields a compensation rate of $195.66. Temporary total disability benefits were paid pursuant to this Agreement from March 4, 1992 through June 10, 1992.
5. On June 5, 1992, the Chief Claims Examiner approved a Form 24 Application by Carrier to Stop Compensation due to plaintiff's failure to keep a medical appointment.
6. On May 14, 1992, the plaintiff returned to work at his pre-existing wage. However, he became disabled from work on or about May 27, 1992. Thereafter, the parties entered into a Form 26 Supplemental Agreement, through which temporary total disability benefits were reinstated.
7. The defendants filed a Form 33 Request for Hearing on March 31, 1994, seeking review of the denial of their Form 24 which was filed on March 15, 1994.
8. On May 12, 1994, the plaintiff filed a Form 33, seeking payment of travel and prescription drugs.
******************
The Full Commission modifies the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, the plaintiff was a forty-six year old male who had been employed for one month as a truck driver for defendant-employer.
2. The plaintiff attended school through the tenth grade. He subsequently obtained his G.E.D. From 1980 through 1985, the plaintiff attended Elizabeth City State University, during which time he earned 101.5 hours in college credits, with a grade point average of 1.9. The plaintiff took one microbiology course from which he withdrew. The plaintiff falsely misrepresented to his doctors that he had taught Art at Berkley, Microbiology at Elizabeth City State and UNC-Chapel Hill.
3. The plaintiff misrepresented that he had attended Appalachian State University and U.N.C. Chapel Hill. Neither university had any record of plaintiff.
4. The plaintiff had a sporadic work history, including work as a sculptor, in construction, and as a security guard.
5. In January of 1992, the plaintiff and his wife moved in with plaintiff's parents due to financial problems.
6. The plaintiff began work for the defendant-employer as a truck driver about February 7, 1992.
7. On March 4, 1992, the plaintiff sustained an admittedly compensable injury to his left shoulder and head when the truck he was driving was hit by a motorist.
8. Following the motor vehicle accident, the plaintiff reported left shoulder pain, blurred vision in the left eye, and a headache to ambulance staff, and that he possibly had lost consciousness for one to one and one-half minutes. After evaluation at Albemarle Hospital, the plaintiff was allowed to return home and was advised to follow-up with his family doctor.
9. On March 6, 1992, the plaintiff was seen by Dr. Roy Hall, at which time he complained of fainting episodes. Dr. Hall referred plaintiff to Dr. Amrutal J. Barot, a neuropsychiatrist with Center Neurologists, Inc.
10. The plaintiff was seen on March 11, 1992, by Dr. Barot, at which time an E.E.G. and M.R.I. were ordered. After all testing was reported as normal, Dr. Barot released the plaintiff to return to work on April 15, 1992.
11. On May 1, 1992, the plaintiff was seen by Dr. Robert B. Hansen, a neurologist. The plaintiff complained of irritability, memory problems, concentration difficulty, and headaches. Dr. Hansen diagnosed plaintiff as having "post-concussive syndrome," "post-traumatic headache syndrome," and "traumatic injury to left shoulder." Thereafter, the plaintiff advised Dr. Hanson that his left shoulder symptoms were better.
12. On May 27, 1992, the plaintiff was seen by Dr. Norman A. Palmeri, an orthopaedist, for left shoulder pain. Dr. Palmeri treated plaintiff with injections.
13. The plaintiff was referred for an opthalmic evaluation by Dr. Michael T. Gilbert on July 17, 1992 due to vision complaints. At that time it was noted that the plaintiff waited for some length of time in the doctor's well-lighted waiting room without using sunglasses; however, upon entering the examination room, the plaintiff complained of light sensitivity in this room. Dr. Gilbert again prescribed bifocals for the plaintiff, which plaintiff did not have filled. Dr. Gilbert found no problem with plaintiff's eyes which were causally related to the motor vehicle accident.
14. In August of 1992, he began complaining to Dr. Norman A. Palmeri of sleep disturbances. In September, the plaintiff began to complain of hallucinatory experiences which included tasting colors and smelling sounds, as well as extreme photosensitivity. Dr. Palmeri opined on August 8, 1992 that plaintiff was able to return to work without any continuous problems of the shoulder as a direct result of the accident. He further noted that plaintiff had pre-existing degenerative changes within the shoulder, but these changes were not directly attributable to the accident and should not hinder plaintiff's ability to drive a truck.
15. Plaintiff remained out of work and was paid temporary total disability from May 27, 1992 through February 23, 1994 pursuant to a Form 26 agreement.
16. On September 10, 1992, the plaintiff returned to Dr. Palmeri with additional complaints at which time Dr. Palmeri noted: "This patient has a rather bizarre affect and I am not certain that his complaints are realistic in view of his excellent range of motion."
17. Brett A. Fox, a clinical neuropsychologist, evaluated plaintiff on October 5, 1992. Plaintiff reported multiple symptoms, too numerous to list, some of which he had never reported before. His symptoms were contradictory and not consistent with what would be expected for the injury. Some symptoms described were of greater severity than a person with significant head traumas and documented brain damage would have. In Brett Fox's final report of his evaluation, he concluded that plaintiff did not reveal significant impairments in overall functioning. Some minor problems were noted, but they should not significantly impact on plaintiff's day-to-day functioning. He was unable to opine that plaintiff's problems resulted from his injury.
18. The plaintiff was referred for in-patient treatment at Maryview Medical Center Pain Clinic on December 3, 1992 to participate in a Pain Management Program for frontal headaches and was released on December 6, 1992, at which time he reported being headache-free.
19. On December 11, 1992, the plaintiff reported to Dr. Hansen that headaches had recurred. Dr. Hansen observed the plaintiff striking his head against a wall in the office; and the plaintiff also attempted to walk in an embellished manner, feigning a seizure after Dr. Hansen advised that the work-related injury had resolved and that his primary problem was psychiatric in nature. Dr. Hansen advised plaintiff to avoid narcotic medication.
20. Dr. Hansen has opined that plaintiff's psychiatric problems are pre-existing and not related to the compensable accident.
21. The plaintiff was hospitalized at Chowan Hospital on December 14, 1992, following being left by his wife. The plaintiff had doubled and tripled his medication prior to the psychiatric admission. Thereafter, he left the hospital against doctor's orders. However, he was readmitted in January of 1993 and discharged on January 27, 1993, at which time it was noted that his headaches were in almost complete remission.
22. In April of 1993, the plaintiff was admitted at Chowan Hospital for acute alcoholic and opiate dependency and for organic personality syndrome. During this treatment, Dr. Reinaldo Heros noted that plaintiff had more prior episodes of conflict with his mother and his wife, including a number of prior separations from his wife, and two prior divorces.
23. Dr. James M. Watson was of the opinion on December 13, 1993 that, in reference to plaintiff's shoulder, plaintiff could return with the restrictions of no overhead lifting.
24. In early 1994, the plaintiff was seen by psychiatrist Dr. Robert A. Blackburn, at which time plaintiff was diagnosed with a somatoform pain disorder, history of drug abuse, and Stadol dependence. After a review of plaintiff's records and tests, Dr. Blackburn could find no objective basis for plaintiff's complaints of pain and no evidence of any cerebral insults.
25. Dr. Blackburn has opined that plaintiff and his wife were motivated by secondary gain, that symptoms were exaggerated, and that the Stadol therapy was improper. He formed the impression that plaintiff and his wife were trying to convince the doctor to continue the Stadol.
26. Dr. Blackburn referred plaintiff to William J. Albrecht, a psychologist, for neuropsychological testing. Mr. Albrecht conducted testing, and found no cerebral dysfunction or cerebral insult.
27. The rehabilitation specialist assigned to plaintiff's case by Crawford and Company noted that after plaintiff's mother ceased handling plaintiff's affairs, the plaintiff's wife did not submit requests for reimbursement on I.C. Form 27T. However, plaintiff and his wife were advised of the necessity of filing the travel and medication expenses on these forms. Therefore, there are no additional issues on this matter.
28. Plaintiff's claim that he is disabled from work as a result of his compensable injury after February 23, 1994 is not accepted as credible.
******************
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. Based upon the greater weight of the evidence, defendant has proven that plaintiff is not disabled from work due to any condition caused by the admittedly compensable injury. Specifically, Dr. Palmeri released plaintiff to return to work on September 10, 1992 and noted no permanent injury to the shoulder as a result of the vehicle accident. Despite examination and treatment by a number of medical specialists, no physician can confirm that any complaints of which plaintiff currently complains were caused by the compensable injury.
2. Based upon the greater weight of evidence in the record, plaintiff's psychiatric problems are unrelated to the compensable injury.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for continuing temporary total disability benefits is, and under the law must be, DENIED.
2. Each side shall pay its own costs, except that defendants shall pay an expert witness fee of $175.00 to Dr. Robert Blackburn.
 S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________________ COY M. VANCE COMMISSIONER
BSB:m